. Stroup *et al. v.* Chase.

The facts showing that the paternal grandparents, by express gift of
the mother on her deathbed and by subsequent acquiescence of
the father until he himself died, acquired full and complete pa-
rental right to the child in question, the maternal grandmother
cannot by *habeas corpus* deprive them of the custody of the child
on the ground that they detain it illegally from her.    *Janes* v. *Cleg-
horn,* 54 *Ga.* 9; *Hammond* v. *Hammond,* 90 *Ga.* 527.

March 19, 1894.   Argued at the last term.            *Judgment reversed.*

*Certiorari.*   Before Judge Milner.   Catoosa superior
court.   August term, 1893.

Mrs. Chase, the maternal grandmother of Jessie
Stroup, a girl of four years, brought a petition for *habeas
corpus·* to recover the custody of the child from Jacob
Stroup and wife, the child's paternal grandparents.
The ordinary awarded the child to petitioner, which
ruling was sustained on *certiorari.*   The petition, sworn
to by Mrs. Chase, alleges that the child's father before
his death, which occurred a few months previously,
gave her to petitioner to take charge of when Mrs.
Jacob Stroup should become so she would be unable to
take care of her; that Jacob Stroup and wife are not
able to care for the child properly; that they are very
poor, and Jacob Stroup is mentally infirm and his wife
physically so; that the child, being of tender years and
being herself somewhat infirm, needs care and attention
which neither Jacob Stroup nor his wife can bestow;
that petitioner is entitled to the custody of the child
and her detention by defendants is illegal and wrongful;
that their claim of right to the custody is unfounded;
that the child is needing medical attention, and peti-
tioner desires her custody so that proper treatment may
be afforded her and her wants supplied.   The testimony
for petitioner was, in brief: The child's mother died
about four years ago, and her father only a short

time ago.  Defendants are old and poor and not able financially or physically to take care of and support the child properly.  Jacob Stroup is very infirm and able to work but little; his eyesight is bad; he never goes to church, and has peculiar notions about religion.  Mrs. Chase heard him say that God was an unjust God and had dealt with him unjustly, and heard him cursing in the presence of the child not long ago. The child is and has been all her life sickly.  She needs medical attention and does not get any from defendants; they are not able to give her such as she needs, and do not clothe her properly.  On some occasions while the child was at the house of Mrs. Chase, she needed underclothing, and Mrs. Chase gave it to her, Mrs. Stroup saying she was not able to get it.  Mrs. Chase has about $160, and her two sons owe her about $50; has no other property; her sons work on the railroad, divide with her their wages and help her along, but are not obliged to do so.  With their help she expects, if she gets the child, to be able to supply its wants properly.  One of her sons gets $45 and the other $50 per month.  At the end of each month they give her the greater part of their wages, and are anxious to help raise and educate the child.  Once Jacob Stroup spoke about what a hard time he had to make a living; that he was nearly blind and able to work but little; that he had paid $40 towards the land he and his son lived on, and his son had paid $50.  He said something about trying to get on the county, in connection with his talk of the hard time he had getting along.  The child's father, some time prior to his death and while sick, went with his wife to her father's house, where he died, leaving the child with the defendants.  Jacob Stroup went after some of the neighbors to help work, which was needed. He worked in the field.  He is not lazy at all; goes about where he pleases; is peculiar in his ways; will eat with

his hat on, etc. The child always had clothes to wear when witness saw her. Defendants are poor, and Jacob Stroup is somewhat infirm, but is very industrious; stays close at home and works in the field. His wife is a nice lady. A witness took meals at their house and saw plenty to eat; heard Jacob Stroup say he would starve, was not able to work and was blind. Had heard him talking this way for twenty years. He seems to be a chronic complainer. He can see to work and does work on the farm. He and his wife are able (as a witness thought) to support themselves and the child. Two doctors had examined the child and found that she was affected with some constitutional trouble, and needed a tonic, which any one could administer after it was prepared. Her mother and father were similarly affected. They died of consumption. Plaintiff is a nice lady and would be in every way a suitable person to have the custody of the child.

Jacob Stroup testified: The child's mother, when on her dying bed, gave the child, then an infant of five or six months, to his wife to raise and take care of until she was grown. Under this gift he and his wife took possession, and have had the child since. They have cared for her and supplied her wants. Her father never disputed their right to her. He lived on the same land with witness, and they cultivated the crop together, witness furnishing stock, until the spring of 1892, when his son became sick and unable to work. Witness gathered the crop himself. During the first two years of the child's life she was sickly and hard to raise. Mrs. Stroup waited on her all this time and cared for her by day and night until she got stout, and has at no time neglected her. Plaintiff wanted to keep the child a while, and defendants let her stay with the plaintiff, and while there plaintiff made her a few clothes without any request from either of the defendants. This was all that plain-

tiff did for her. She never offered to keep her while she was little and sickly. Defendants have plenty of corn to make their bread until this year's crop is made, plenty of meat to do them two years, a good cow and all the milk and butter they need. The child is stout and well. Sometimes she has a rising in one of her ears, which does not last long and does not seem to hurt her. Defendants do any kind of work that is needed. Witness sometimes complains and says he cannot work, when he does not mean it; supposes he is a chronic complainer; has done this for years. Does not .go to church much, but is a constant reader of the Bible. Never teaches the child anything improper. Never called on any one to help him in the crop.—Mrs. Grubb testified that she was present when the child's mother was sick and gave her to Mrs. Jacob Stroup and told her to take her and raise her until she was grown, and to let no one have her as long as she lived, and told her not to let plaintiff have her. She is now a fine stout child. Defendants have treated her well and kept her clothed. Her father never took control of her. Defendants always had plenty to eat, and witness thinks they are well able to take care of the child properly.

PAYNE & WALKER, for plaintiff in error.
W. E. MANN, by R. J. McCAMY, contra.